WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Excel Fortress Limited, et al., | No. CV-17-04297-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Vaughn La Verl Wilhelm, et al., | |
| Defendants. | |

Pending before the Court are three interrelated requests for relief: (1) Plaintiff EFG America, LLC's Motion to Transfer and Consolidate (Doc. 79), (2) the parties' Joint Written Summary of Discovery Dispute (Doc. 83), and (3) Plaintiffs' Amended Motion to Extend Deadline to Submit Report of Rubber Devulcanization Expert (Doc. 88). As explained below, the Court will deny the motion to transfer, deny in significant part Plaintiffs' discovery-related requests, and deny the motion to extend the expert-disclosure deadline.

## BACKGROUND

1. <u>The Trade Secrets Case</u>

This lawsuit ("the Trade Secrets Case") was initiated in April 2017. (Doc. 1.) The complaint was initially filed in the U.S. District Court for the Southern District of Texas but was later transferred to this Court. (Doc. 39.)

Plaintiffs' theory, in a nutshell, is that Defendants misappropriated their trade secrets related to the "devulcanization" of rubber, improperly hired their former chief

scientist in China, and tortiously interfered with their contractual and business relationships. (*See generally* Doc. 79 at 2-3.) The operative complaint identifies two Plaintiffs (Excel Fortress Limited and EFG America, LLC) and five Defendants (Vaughn La Verl Wilhelm, Ryan McHugh, Eversource Capital LP, Eversource Group, LP, and Eversource Global Technology LLC). (Doc. 62.)

On January 19, 2018, Plaintiffs served their first set of interrogatories and requests for production on defendants Wilhelm and McHugh. (Doc. 48.)

On January 29, 2018, the parties filed their Rule 26(f) report. (Doc. 53.) In it, Plaintiffs voiced an intention to pursue discovery on an "expedited" basis so they could "quickly" seek injunctive relief. (Doc. 53 at 10-11.) Plaintiffs also requested a much more aggressive discovery schedule than Defendants—for example, Plaintiffs requested an initial expert disclosure deadline of August 3, 2018, while Defendants requested that this deadline not be set until February 1, 2019. (Doc. 53 at 10.)

In its Rule 16 Scheduling Order, the Court reached a compromise between the parties' scheduling requests. (Doc. 55.) Specifically, the Court designated November 2, 2018, as the deadline for Plaintiffs to make their initial expert disclosures. (Doc. 55 at 2.) The Court further emphasized that "[f]ull and complete disclosures . . . are required on or before the dates set forth above; absent truly extraordinary circumstances, parties will not be permitted to supplement their expert reports after these dates." (*Id.*) The Court also advised the parties, during the Rule 16 scheduling conference, that extension requests should not be made on, or even near, the deadline at issue.

On February 20, 2018, Defendants Wilhelm and McHugh each submitted a response to Plaintiffs' first set of interrogatories and requests for production. (Doc. 88, Exhs. 1, 2.) Each response included objections to some of the questions. (*Id.*)

On November 2, 2018—some 255 days later—Plaintiffs brought the discovery dispute to the Court's attention via the submission of a two-page joint summary. (Doc. 83.)

On November 2, 2018, Plaintiffs also filed a motion to extend the expert-

disclosure deadline. (Doc. 87, refiled as amended as Doc. 88.) In that motion—which was filed at 5:59 p.m. on the day of the deadline—Plaintiffs asserted that "unanticipated business circumstances [had] prevented them from aggressively pursuing discovery" over the last eight months but assured the Court they were now "better situated" to pursue their claims. (Doc. 88 at 3-4.) Plaintiffs also acknowledged that their "expert with regard to rubber devulcanization technology," which is "the issue at the very heart of this case," had not even started his analysis. (Doc. 88 at 1).

On November 13, 2018, the Court held a lengthy telephonic hearing to obtain more information concerning the discovery dispute. (Doc. 90.)

2. The Fraud Case

On August 15, 2018, a separate lawsuit ("the Fraud Case") was filed in the U.S. District Court for the District of Arizona. It was given case number 18-cv-2583 and assigned to Judge Humetewa.

The complaint in the Fraud Case identifies one Plaintiff (Eversource Capital, LP) and at least 18 Defendants. Only one of the Defendants (EFG America LLC) is also a party in the Trade Secrets Case. The complaint alleges, in a nutshell, that Eversource Capital was fraudulently induced to make a $950,000 loan to EFG America, LLC and that the loan was thereafter squandered. (*See generally* Doc. 79 at 4 ["Essentially, Defendants . . . in this action allege they made certain loans to EFG and Fimrite . . . ."].)

3. The Consolidation/Transfer Request

On October 15, 2018, EFG America, LLC—which, as noted, is a plaintiff in the Trade Secrets Case and a defendant in the Fraud Case—filed a motion to transfer and consolidate the two cases for discovery purposes. (Doc. 79.)

On October 26, 2018, the five defendants in the Trade Secrets Case filed an opposition. (Doc. 81.) Their position is that the two cases have very little factual and legal overlap and that the consolidation request amounts to "nothing but an attempt to secure an extension of discovery after Plaintiffs [in the Trade Secrets Case] . . . failed to pursue discovery for over seven months." (Doc. 81 at 2.)

**ANALYSIS**

1. Discovery Dispute

In their written submission to the Court, the parties stated they had unresolved disputes concerning McHugh's response to interrogatories 11-16, Wilhelm's response to interrogatories 12-17, and both Defendants' responses to document requests 1, 2, 5, 6, 9, 10, 16, 17, and 18. (Doc. 83 at 1.) However, during the November 13 hearing, the parties clarified that (a) the McHugh interrogatory responses and the Wilhelm interrogatory responses are basically identical and raise the same issues (they were simply numbered differently) and (b) there is no actual dispute as to two of the interrogatories that were identified in the joint statement (McHugh 14/15 and Wilhelm 14/15). (Doc. 90.) Accordingly, the Court will address only McHugh Interrogatories 11-13 and 16 and RFPs 1, 2, 5, 6, 9, 10, 16, 17, and 18 in this Order.

For purposes of resolving those disputes, the Court notes that "broad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (citation omitted). In general, a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b). However, it is not the province of the Court to rewrite discovery requests that seek irrelevant information, are overbroad, or are otherwise improper. *See, e.g., Mailhoit v. Home Depot U.S.A., Inc.*, 2012 WL 12884129, *2 (C.D. Cal. 2012) ("[T]he court is not obligated to impose limiting constructions on interrogatories that are overbroad, vague, or seek irrelevant information, but may simply deny the request to compel further responses."); *Frieri v. Sysco Corp.*, 2017 WL 3387713, *7 (S.D. Cal. 2017) ("The Court declines to rewrite this discovery request to narrow the scope. Plaintiff's motion to compel any further production in response to this request is DENIED."); *Mycosafe Diagnotics GmbH v. Life Techs. Corp.*, 2013 WL 12097536, *2 (S.D. Cal. 2013) ("The RFPs . . . are overbroad. . .

. [I]t is not the province of the Court to rewrite discovery requests. . . . Accordingly, the joint motion to determine a discovery dispute, to the extent that it contains Defendants motion to compel further responses to RFPs 54-56 is DENIED."); *Jarosiewicz v. Conlisk*, 60 F.R.D. 121, 127 (N.D. Ill. 1973) ("This Court will not attempt to judicially rewrite [plaintiff's] interrogatories. Instead all interrogatories will be stricken without prejudice to the plaintiff so that the plaintiff can properly draft interrogatories if he deems it necessary.").

▪ McHugh Interrogatory 11 (Wilhelm Interrogatory 16)

This interrogatory requests information about each real or potential investor in Eversource "related to technology developed or used for the devulcanization of rubber." (*See* Doc. 88-1 at 5; Doc. 88-2 at 9-10.) The Court orally denied Plaintiffs' motion to compel during the November 13, 2018 hearing (Doc. 90) and wishes to expand on that ruling here. On the one hand, it's true that some of the information sought by this interrogatory may be relevant to Plaintiffs' claims for breach of contract and tortious interference. After all, the complaint alleges that Defendants violated nondisclosure agreements by "contracting for financing, business opportunities and consulting compensation with prohibited parties" (*see* Doc. 62 ¶¶ 76-81, 84), and any efforts by Defendants to knowingly obtain investments from Plaintiffs' investors might be relevant to those claims. On the other hand, the interrogatory is overbroad because it also seeks information about Defendants' investors who are not business contacts of Plaintiffs. The relevance of such information is not apparent, and the Court is mindful of the potential for abuse that may arise when one business seeks to use the discovery process to obtain minimally-relevant, highly-sensitive information from a competitor. The Court therefore denies Plaintiffs' request to compel further responses.

▪ McHugh Interrogatory 12 (Wilhelm Interrogatory 12)

This interrogatory requests identification of "all trips you have taken in which you have engaged in any professional activities . . . on behalf of EFG, Excel Fortress and/or Eversource." (Doc. 88-1 at 5-6; Doc. 88-2 at 5.) Defendants contend the interrogatory is

overbroad and the Court agrees. This interrogatory would require McHugh and Wilhelm to identify each and every work trip they took over a multi-year period, regardless of whether the trip was related to any allegations in the complaint. It would, for example, require McHugh and Wilhelm to identify each instance they traveled to meet with a new prospective investor on behalf of Eversource, even if the prospective investor was unknown to Plaintiffs. For the reasons stated above (regarding McHugh 11/Wilhelm 16), such information is minimally relevant (if at all) and poses a potential for abuse in the hands of a competitor. The Court therefore denies Plaintiffs' request to compel further responses.

▪ McHugh Interrogatory 13 (Wilhelm Interrogatory 13)

This interrogatory requests information about "each occasion on which you have met with either Dr. Li Xing Ru, or [his daughter] Li Zhe Ying . . . ." (Doc. 88-1 at 6-7; Doc. 88-2 at 5-7.) In their written responses, McHugh identified four such meetings and Wilhelm identified five. (*Id.*) During the November 13, 2018 hearing, Defendants conceded these responses were incomplete because they also met regularly with Dr. Li's daughter relating to her work in the laboratory. Because these meetings may be relevant to Plaintiffs' claims, the Court orders Defendants to supplement their responses to reflect all meetings that occurred between each Defendant and Dr. Li or Dr. Li's daughter. However, to the extent Defendants have met with Dr. Li or Dr. Li's daughter on a frequent basis related to a specific topic (*e.g.*, discussing progress on development of devulcanization technology), it is sufficient for each Defendant to summarize those meetings under a single heading, rather than undertaking the burdensome task of identifying each specific meeting.

▪ McHugh Interrogatory 16 (Wilhelm Interrogatory 17)

This interrogatory requests that Defendants "[i]dentify all prospective, current and former vendors or service providers of Eversource from September 2015 to the present relating to rubber devulcanization products or services." (Doc. 88-1 at 9-10; Doc. 88-2 at 9-10.) Defendants contend this request is overbroad and the Court agrees. Once again,

although some of the information sought by this interrogatory may be relevant to Plaintiffs' trade-secret and tortious-interference claims, it sweeps far too broadly. To the extent Plaintiffs wish to discover whether Defendants are utilizing particular chemicals or procuring particular services, they should propound tailored questions that go directly to those issues. Asking a business competitor to identify all of its vendors, due to the possibility that some of those vendors may be off-limits, is not an appropriate discovery tactic.

▪ Document Request 1

This request seeks "[a]ll communication . . . between you and other defendants in this matter . . . from September 2014 to present." (Doc. 88-1 at 10-11; Doc. 88-2 at 10-11.) This request is extraordinarily broad. It does not contain any subject matter limitations, such as communications "related to the devulcanization of rubber." Instead, as written, it would require Defendants to produce communications completely unrelated to the claims in this case, such as invitations to social gatherings. The Court therefore denies Plaintiffs' request to compel further production.

▪ Document Request 2

This request seeks "any and all documents, including communications, relating in any way to the business relationship between you and Eversource." (Doc. 88-1 at 11; Doc. 88-2 at 11.) The Court first notes that there are three Eversource defendants in this case: Eversource Capital LP; Eversource Group, LP; and Eversource Global Technology LLC. As represented by Defendants during the November 13, 2018 hearing, at least some of the Eversource entities conduct some business unrelated to rubber devulcanization. But document request 2 does not limit itself to the rubber devulcanization business, which is the crux of this case. Consequently, the Court finds the request is overbroad and therefore denies Plaintiffs' request to compel further production.

▪ Document Request 5

This request seeks "any and all documents, including communications, relating

[to] Dr. Li Xing Ru from September 2014 to present." (Doc. 88-1 at 12; Doc. 88-2 at 12.) The request is overbroad because it does not contain any subject matter limitations. It would, for example, require Defendants to produce documents demonstrating Dr. Li's efforts to develop new devulcanization technologies that are unrelated to Plaintiffs' alleged trade secrets or any other claims. Thus, the Court denies Plaintiffs' request to compel further production.

▪ Document Request 6

This request seeks the same production as request 5, except with regard to Dr. Li's daughter. (*See* Doc. 88-1 at 12; Doc. 88-2 at 12.) It fails for the same reason—a lack of subject-matter limitation. The Court therefore denies Plaintiffs' request to compel further production.

▪ Document Request 9

This request seeks "any and all documents relating to the business purposes and products of Eversource or your current employer in the rubber devulcanization business." (Doc. 88-1 at 13; Doc. 88-2 at 13.) The Court denied Plaintiffs' request to compel further production during the November 13, 2018 hearing (Doc. 90) and wishes to expand on its reasoning here. To comply with this request, Defendants would presumably need to produce every scrap of paper ever created by any of the Eversource entities (one of which apparently has little if anything to do with rubber devulcanization). This is improper. *Cf. Segan v. Dreyfus Corp.*, 513 F.2d 695, 696 (2d Cir. 1975) (interrogatories seeking "virtually the entire business history of defendants for a period of several years" constituted an impermissible "fishing expedition of large proportions"). Furthermore, it is not the Court's job to create a limiting construction that might cure such obvious overbreadth.

▪ Document Request 10

This request seeks "any and all documents, including communications, related to the development of devulcanized rubber by Eversource or your current employer." (Doc. 88-1 at 13; Doc. 88-2 at 13.) This request is overbroad as written because it would

require Defendants to produce, for example, documentation regarding research they are currently conducting to develop new processes for devulcanizing rubber. Such information is unnecessary for Plaintiffs to prove Defendants stole their trade secrets and poses a potential for abuse in the hands of a competitor. The Court therefore denies Plaintiffs' request to compel further production.

- Document Request 16

This request seeks telephone records for every cell phone used by Defendants, "whether for personal or professional purposes," from September 2015 to the present. (*See* Doc. 88-1 at 4, 15; Doc. 88-2 at 4, 15.) Although some of Defendants' cell phone records may be properly subject to discovery, Plaintiffs' insistence on demanding the production of personal cell phone records with no connection to the claims asserted in the complaint renders this request—like so many of the others—overbroad. Accordingly, the Court denies Plaintiffs' request to compel further production.

- Document Request 17

This request seeks "travel records and receipts related to your response to Interrogatory No. 12." (Doc. 88-1 at 15; Doc. 88-2 at 15.) Because the Court has determined that interrogatory 12 is overbroad, the Court denies Plaintiffs' request to compel further production pursuant to document request 17.

- Document Request 18

This request seeks "any and all financial or banking records" for accounts Defendants used related to rubber devulcanization efforts. (Doc. 88-1 at 15-16; Doc. 88-2 at 15-16.) This request is again overbroad. Although it might enable Plaintiffs to discover information relevant to their claims, it is also likely to drag in a large amount of sensitive information that is irrelevant to Plaintiffs' claims, such as payments to Defendants' suppliers with whom Plaintiffs have never had a business relationship. Accordingly, the Court denies Plaintiffs' request to compel further production.

2. Motion to Extend

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party

seeking the amendment. . . . [C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. . . . [T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Here, Plaintiffs were not diligent in pursuing discovery. After Defendants responded to Plaintiffs' discovery requests, Plaintiffs waited more than *eight months* to raise their grievances with the Court regarding the perceived inadequacy of those responses. Indeed, Plaintiffs filed their Motion for Extension of Time at 5:59 p.m. on the evening of the deadline. This is the antithesis of diligence.

It is also apparent that the parties made very little effort to meet and confer before bringing their discovery dispute to the Court's attention. As discussed above, many of the overbreadth deficiencies in Plaintiffs' interrogatories and requests for production may be curable. The parties should have spent the last eight months working together to resolve (or, at least, narrow the scope of) these issues. That didn't happen. As a result, Plaintiffs were left to dump a series of overbroad discovery requests on the Court's lap on the eve of the expert-disclosure cutoff. This, again, is the antithesis of diligence.

It is also notable that several of the disputed discovery requests (*e.g.,* the requests about contacts with investors) seek information primarily related to Plaintiffs' tortious inference claim, not their trade secrets claim. It is not clear why Plaintiffs' devulcanization expert would need such information before starting his analysis.

Accordingly, the Court finds that Plaintiffs were not diligent in pursuing discovery and that "good cause" therefore does not exist to amend the scheduling order to extend the expert-disclosure deadline.

3. <u>Motion to Transfer and Consolidate</u>

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other

orders to avoid unnecessary cost or delay." A district court has "broad discretion" under this rule and should "weigh[] the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984). Thus, even if a common question of law or fact exists, the "court '*may*,' but is not *required* to, consolidate actions." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 856 (9th Cir. 2016) (emphasis in original). "The party seeking consolidation bears the burden of demonstrating that convenience and judicial economy would result from consolidation." *Snyder v. Nationstar Mortg. LLC*, 2016 WL 3519181, *2 (N.D. Cal. 2016).

The Court will decline to order consolidation here. First, the two cases have very little factual overlap. As noted, the Trade Secrets Case primarily concerns whether Defendants: (1) misappropriated Plaintiffs' trade secrets related to the devulcanization of rubber; (2) made false and disparaging statements to third parties about Plaintiffs; (3) tortiously interfered with Plaintiffs' business relationships; and (4) violated the terms of a nondisclosure agreement. On the other hand, the Fraud Case alleges that the approximately 18 defendants fraudulently induced Eversource Capital, LP (a defendant in the Trade Secrets Case) to loan $950,000 to them and that those defendants breached the terms of the loan. The cases currently share only two parties: Eversource Capital and EFG America LLC. Plaintiffs do not allege the two cases share any common questions of law, and it is questionable whether the cases' modestly overlapping factual backgrounds qualify as a "common question of fact" under Rule 42(a).

Second, and more important, consolidation would be inappropriate even if Rule 42(a)'s threshold requirement of commonality were met. Because "[t]he factual determinations to be made in each case will be mostly unrelated," there is little reason to believe consolidation will promote judicial economy. *Silaev v. Swiss-America Trading Corp.*, 2015 WL 12938977, *2 (D. Ariz. 2015). Additionally, consolidation will result in hardship and unfairness to some of the parties. The Trade Secrets Case was filed more than a year and a half ago and the expert-disclosure deadline has already passed. The

Fraud Case, in contrast, was filed only a few months ago and its expert-disclosure deadline isn't until late 2019. Consolidating the two cases "for discovery purposes," as Plaintiffs request, would thus work to the detriment of Wilhelm, McHugh, and the other parties who are only defendants in the Trade Secrets Case—it would increase their litigation costs and significantly delay their case's resolution. *See, e.g., Firefighters, Local 1908 v. Cty. of Clark*, 2012 WL 1986590, *3 (D. Nev. 2012) (denying consolidation request, despite presence of common questions of fact, because the two cases posed different legal issues and "perhaps most importantly, the two cases that Plaintiff seeks to consolidate are at different stages of the litigation process"). *See also* Fed. R. Civ. P. 1 (the rules of civil procedure "should be construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding"). Moreover, the effect of ordering consolidation would be to give Plaintiffs a second bite at the discovery apple after displaying a marked lack of diligence over the past eight months.

Because the Court is denying the motion for consolidation, it will not address whether transfer is appropriate. *Silaev*, 2015 WL 12938977 at *2 ("Because the Court has not granted consolidation, it does not independently reach the issue of whether transfer is appropriate.").

Accordingly,

**IT IS ORDERED** that Plaintiffs' request to compel further discovery responses (Doc. 83) is **GRANTED IN PART AND DENIED IN PART, as discussed above**.

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Motion to Extend Deadline to Submit Report of Rubber Devulcanization Expert (Doc. 88) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Transfer and Consolidate (Doc. 79) is **DENIED**.

Dated this 20th day of November, 2018.

Dominic W. Lanza
United States District Judge