**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Excel Fortress Limited, et al., <br> Plaintiffs, <br> v. <br> Vaughn La Verl Wilhelm, et al., <br> Defendants. | No. CV-17-04297-PHX-DWL <br><br> **ORDER** |

**INTRODUCTION**

This trade secrets case was filed in April 2017. At first, Plaintiffs expressed a desire to litigate the case aggressively and requested an expedited discovery schedule to accomplish this goal. As a result, the Court set Plaintiffs' expert-disclosure deadline as November 2, 2018. The scheduling order provided that "[e]xpert reports . . . must set forth 'the testimony the witness is expected to present during direct examination, together with the reasons therefor.' Full and complete disclosures of such testimony are required on or before the dates set forth above; absent truly extraordinary circumstances, parties will not be permitted to supplement their expert reports after these dates." (Doc. 55 at 2.)

In early 2018, after serving a set of overbroad discovery requests on Defendants, Plaintiffs effectively stopped litigating this case. They didn't retain a devulcanization expert, even though this is "the issue at the very heart of this case" (Doc. 87 at 2), and didn't seek judicial intervention after Defendants declined to answer many of their discovery requests on overbreadth grounds. Months and months passed with little to no

action.

Finally, during the two weeks preceding the November 2, 2018 expert-disclosure deadline, there was a burst of activity. During this period, Plaintiffs (1) raised a belated objection to the discovery responses that Defendants had provided 255 days earlier (Doc. 83) and (2) asked for the case to be consolidated with a different case in which the discovery deadlines hadn't elapsed (Doc. 79). Additionally, on the afternoon of November 2, 2018, Plaintiffs (1) filed a motion seeking an extension of the expert-disclosure deadline (Docs. 87, 88) and (2) provided a bare-bones expert disclosure to Defendants (Doc. 92-1). Although this one-and-a-half-page document identified two devulcanization experts by name, it didn't purport to summarize their opinions and conclusions and didn't provide any written reports from them. (Doc. 92-1 at 3-4.)[1] Plaintiffs acknowledged this disclosure was "incomplete" but argued that Defendants were to blame, because they hadn't responded to the discovery requests propounded earlier that year. (*Id.*)

On November 20, 2018, the Court issued an order resolving many of these issues. (Doc. 100.) Among other things, the Court concluded that (1) essentially all of Plaintiffs' discovery requests were overbroad, and Defendants were therefore justified in declining to respond to them (*id.* at 4-9), (2) the expert-disclosure deadline would not be changed, because "Plaintiffs were not diligent in pursuing discovery and . . . 'good cause' therefore does not exist to amend the scheduling order to extend the expert-disclosure deadline" (*id.* at 9-10), and (3) the consolidation request would be denied, because "the expert-disclosure deadline has already passed" and consolidation "would thus work to the detriment of . . . [the] defendants in the Trade Secrets case—it would increase their litigation costs and significantly delay their case's resolution" (*id.* at 10-11).

There are now three additional matters pending before the Court. First, Defendants have moved to strike the expert disclosures that Plaintiffs provided on November 2, 2018. (Doc. 92.) Second, Plaintiffs have moved to compel Defendants to supplement their

---

[1] The disclosure also identified a third expert, Dr. Jinzhu Yang, and provided a report from Dr. Yang. (Doc. 92-1 at 8-62.) As explained below, the Court finds that the disclosures concerning Dr. Yang were appropriate.

responses to the revised discovery requests that Plaintiffs propounded after the Court determined the initial requests were overbroad. (Doc. 113.) Third, the parties have asked the Court to determine whether Dr. Li is a managing agent of Defendants, and thus may be required to sit for a deposition, or whether Dr. Li is a mere consultant who may submit an affidavit in lieu of being deposed. (Doc. 114.)

As explained below, the Court will deny the motion to strike (although the denial is without prejudice as to two of the three experts), deny Plaintiffs' request to compel Defendants to provide additional responses to their latest batch of discovery requests, and deny Plaintiffs' request to require Defendants to produce Dr. Li for a deposition.

**DISCUSSION**

I. <u>The Motion to Strike Plaintiffs' Experts</u>

Plaintiffs provided their expert disclosure to Defendants on November 2, 2018. (Doc. 92-1.) The disclosure identifies three experts: (1) Dr. Jinzhu Yang, who is identified as "a Chinese lawyer"; (2) Dr. Jacques Noordermeer, "an expert in rubber devulcanization"; and (3) Michael Kumbalek, "an internal expert in rubber compounds and properties." (Doc. 92-1 at 3.) With respect to Dr. Yang, Plaintiffs also provided a report that summarizes his opinions and conclusions. (Doc. 92-1 at 7-11.) No reports were provided for Dr. Noordermeer or Mr. Kumbalek. In addition, the notice does not attempt to summarize either expert's conclusions and opinions:

> Without having any information regarding Defendants' rubber devulcanization efforts related to Plaintiffs' trade secret claims, Plaintiffs' rubber devulcanization experts . . . have not been able to prepare any opinions and conclusions (and a report to the extent required) regarding the similarities between Defendants' products and services and those of Plaintiffs. The disclosure is therefore incomplete and made without prejudice to Plaintiffs' ability to supplement.

(Doc. 92-1 at 3.)

In their motion to strike, Defendants ask the Court to strike all three experts. (Doc. 92.) First, Defendants argue the disclosure concerning Dr. Yang is improper because his expert report "provide[s] both legal conclusions and the application of the law to the facts."

(Doc. 92 at 4.) Second, Defendants argue the disclosure concerning Dr. Noordermeer is deficient because "it is not accompanied by an expert report." (*Id.* at 5.) Third, Defendants argue the disclosure concerning Mr. Kumbalek is deficient because Plaintiffs only provided "the general subject matter of which Mr. Kumbalek is expected to testify," not "a summary of the facts and opinions to which [he] is expected to testify." (*Id.*)

In their response, Plaintiffs argue that Dr. Yang should be permitted to testify because he "will be able to assist the Court with regard to potential foreign law issues," which is permissible under Federal Rule of Civil Procedure 44.1. (Doc. 107 at 3-4.) Moreover, Plaintiffs argue that Defendants' motion to strike is premature as to Dr. Yang because the motion is "based on the proposed substance of his testimony." (*Id.* at 4-5.) With regard to Dr. Noordermeer and Mr. Kumbalek, Plaintiffs do not contend their disclosures were proper; rather, Plaintiffs argue they should be permitted to supplement these disclosures after Defendants respond to their discovery requests. (*Id.* at 5-9.) Finally, Plaintiffs argue Mr. Kumbalek should be allowed to testify about general concepts of the chemical process of rubber devulcanization even if the Court strikes his opinion testimony. (*Id.* at 9.)

### A. Dr. Yang

Dr. Yang is a Chinese lawyer retained by Plaintiffs to interpret provisions of a Chinese employment contract relevant to this case. In his expert report, Dr. Yang provides the following five opinions: (1) the contract's non-compete clause was accurately translated from Chinese into English, (2) two other clauses in the contract (one requiring Dr. Li and his daughter to maintain the confidentiality of research achievements, the other awarding ownership over such achievements to Excel) were also accurately translated from Chinese into English, (3) a different clause of the contract, which enabled Dr. Li and his daughter to withdraw from the contract without written notice, "only applies to the limited two scenarios therein"; (4) assuming Plaintiffs' theory of the case is true, Dr. Li and his daughter breached the contract by leaving Excel without providing 60 days' written notice; and (5) the employment contract was "enforceable and acceptable under PRC [Chinese]

law." (Doc. 92-1 at 9-10.)

The motion to strike Dr. Yang will be denied. Although it is true that Dr. Yang offers legal conclusions (*i.e.,* the Chinese contract is enforceable) and purports to apply the law to the facts (*i.e.,* Dr. Li was required, under the contract, to give 60 days' notice before leaving)—things that experts are usually prohibited from doing—a different set of rules and standards apply when foreign law is at issue. Federal Rule of Civil Procedure 44.1 provides that a court "may consider any relevant material or source, . . . *whether or not . . . admissible under the Federal Rules of Evidence,*" when determining the meaning of foreign law. *Id.* (emphasis added). For this reason, the Ninth Circuit and other courts have concluded an expert may, under Rule 44.1, opine on the ultimate issue of whether a contract is enforceable under foreign law. *See, e.g., Universe Sales Co., Ltd. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1038-39 (9th Cir. 1999) (holding that expert's declaration, which opined that "[u]nder Japanese law . . . the License Agreement is both valid and enforceable, and as such requires that Universe make royalty payments to Sportswear," was "admissible pursuant to Federal Rule of Civil Procedure 44.1," and reversing district court for "fail[ing] properly to take the [expert's] declaration into account"); *Winn v. Schafer*, 499 F. Supp. 2d 390, 396 n.28 (S.D.N.Y. 2007) (citations omitted) ("Plaintiff objects to the court's consideration of the House Declaration, arguing that a foreign law expert may not opine as to the 'ultimate application of the (foreign) law to the facts of the case.' Under Rule 44.1, however, . . . [a] court may . . . consider a foreign law expert's opinion even on ultimate legal conclusions."). Thus, although the Court is not required to uncritically accept Dr. Yang's legal opinions, it will not strike him as an expert.

**B.     Dr. Nordermeer**

Rule 26(a)(2) provides that if a witness "is one retained or specially employed to provide expert testimony," the retaining party's disclosure must be accompanied by a written report. The report must contain: (1) "a complete statement of all opinions the witness will express and the basis and reasons for them"; (2) "the facts or data considered by the witness in forming them"; (3) "any exhibits that will be used to summarize or support

them"; (4) "the witness's qualifications, including a list of all publications authored in the previous 10 years"; (5) "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition"; and (6) "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). These disclosures must be provided "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Here, Plaintiffs' disclosure only identified Dr. Noordermeer's name, hourly rate, and qualifications. (Doc. 92-1 at 3; *id.* at 27-62.) It did not summarize his opinions and conclusions and did not provide a report from him. Plaintiffs concede the disclosure was therefore "incomplete" under Rule 26(a). (Doc. 92-1 at 3.)

The disputed issue is what consequence should flow from Plaintiffs' failure to meet their disclosure obligations. On this issue, Rule 37(c)(1) supplies the relevant test: "If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information or witness . . . unless the failure was substantially justified or is harmless." *See also* Doc. 55 at 2 (scheduling order, providing that "absent truly extraordinary circumstances, parties will not be permitted to supplement their expert reports after" the specified deadlines). "[T]he burden is on the party facing sanctions" to prove the violation was either substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

In their motion to strike, Defendants argue (1) the delay was not justified because Plaintiffs chose to stop litigating for eight months and because Plaintiffs bear the blame for any delay in obtaining discovery due to their promulgation of overbroad discovery requests, and (2) the delay was not harmless because the case has already been pending for 18 months and granting an extension would effectively flip the expert-disclosure sequence and allow Plaintiffs' experts to delay issuing their reports until after reviewing Defendants' experts' reports. (Doc. 92 at 5-8.) In their response, Plaintiffs argue (1) the delay was justified because Defendants "failed to provide complete discovery responses" to their initial set of requests, they previously tried to settle the case, they were initially forced to

file suit in Canada, and it is "very challenging" to find a rubber devulcanization expert (Doc. 107 at 1-2), (2) Defendants would not suffer any harm from a modest extension of the discovery deadlines, as Plaintiffs' experts hope to produce their reports by January 14, 2019 (Doc. 107 at 5-7 & n.1), and (3) excluding their experts would effectively result in the dismissal of their trade secrets claim, and courts should avoid imposing harsh sanctions that interfere with the merits-based resolution of cases (Doc. 107 at 8-9).

The Court concludes that Plaintiffs have not come close to meeting their burden of showing they were "substantially justified" in failing to comply with the November 2, 2018 expert-disclosure deadline. Their main argument is that Defendants are to blame for the delay, due to their failure to provide adequate responses to Plaintiffs' initial round of discovery requests, but the Court already rejected this argument in its November 20, 2018 order. (Doc. 100 at 4-9.) Nor is the Court persuaded by Plaintiffs' "it's hard to find a devulcanization expert" argument. Plaintiffs chose to initiate this lawsuit in April 2017 knowing they'd need such an expert to meet their burden of proof.

The remaining question is whether Plaintiffs have met their burden of proving their non-compliance with the November 2, 2018 expert-disclosure deadline was "harmless." The difficulty in resolving this issue on the current record is that Dr. Noordermeer still hasn't produced his report. As a result, Plaintiffs are forced to posit a hypothetical set of circumstances and ask the Court to rule that those hypothetical circumstances wouldn't cause Defendants to suffer much prejudice. (Doc. 107 at 7 ["Assuming Defendants properly respond to Plaintiffs' more narrowly written discovery requests, Defendants' devulcanization technology will be provided on December 21, 2019. Plaintiffs will then attempt to tender a report by January 14, 2019. Defendants' disclosures would be due February 11, 2019. Plaintiffs[] could potentially provide a rebuttal report by February 18, 2019. All discovery does not close until March 1, 2019, leaving two weeks in which the parties could depose their respective experts."].) Defendants, meanwhile, conjure a different set of hypothetical circumstances, under which their experts would be required to disclose their reports before Dr. Noordermeer's report was produced, and argue those

circumstances would be prejudicial.  (Doc. 92 at 7.)

The Court is disinclined to resolve the issue of harmlessness on this record. Once Dr. Noordermeer actually produces his report, the issues will become less hypothetical and it will become possible to gauge the quantum of harm suffered by Defendants with more certainty.[2] Thus, the motion to strike Dr. Noordermeer will be denied, but without prejudice to Defendants' ability to file a renewed motion after they receive Dr. Noordermeer's report (or, in any event, after the March 1, 2019 discovery cutoff).

One final point warrants emphasis. Defendants already have suffered harm arising from Plaintiffs' conduct. Civil litigation is supposed to be resolved in a "just, speedy, and inexpensive" manner, *see* Fed. R. Civ. P. 1, yet Plaintiffs' conduct has unjustifiably slowed down the resolution of this case and increased Defendants' costs. These are tangible harms. Moreover, it is not "just" for one party to take an eight-month "time out," while the other party expends time, energy, and resources litigating the case, and then permit the dilatory party to avoid any consequences for its conduct. The diligent party should be rewarded for its adherence to court orders and deadlines, not made to feel like a sucker. Nevertheless, it would be premature to grant the motion to strike at this juncture because it remains unclear whether the parties will be able—despite the delay caused by Plaintiffs' conduct—to complete expert discovery by the March 1, 2019 discovery cutoff date. The parties' 30(b)(6) depositions are scheduled to begin in late January 2019, and it's possible the information generated during those depositions may permit Dr. Noordermeer to belatedly generate his report. Also, during the January 4, 2019 telephonic hearing, Plaintiffs' counsel voiced suspicions about the accuracy of Defendants' December 21, 2018 discovery responses concerning their devulcanization process. If these serious accusations prove

---

[2]  Notably, Plaintiffs' hypothetical prejudice-avoiding schedule has already broken down. That schedule was predicated on Plaintiffs' satisfaction with Defendants' discovery production on December 21, 2018. Yet Plaintiffs did not receive any new information in the December 21 production, and as discussed in Part II *infra*, no further production will be ordered. This underscores why it is preferable to wait until matters become less hypothetical before resolving the question of harmlessness.

correct, that would also be relevant to the harmlessness inquiry.

C. **Mr. Kumbalek**

Plaintiffs' disclosure concerning Mr. Kumbalek states that he is an "internal expert in rubber compounds and properties" who serves as President of EFG Polymer, LLC and acts as a consultant for Plaintiff EFG America, LLC. (*See* Doc. 92-1 at 3.) Although the disclosure identifies the general subject matters on which Mr. Kumbalek is expected to opine—"Mr. Kumbalek is expected to testify regarding the subject matter of the chemical properties and performance of rubber, rubber compounds, carbon black, devulcanized rubber and related products relevant to the industry in which Plaintiffs and Defendants compete"—it does not identify the substance of his opinions and conclusions on those issues. (*Id.*) The disclosure also doesn't provide a report from Mr. Kumbalek but asserts he "is not required to provide a written report because his duties as a consultant . . . do not regularly involve giving expert testimony." (*Id.*)

A written report doesn't need to accompany the disclosure of an expert witness who isn't retained or specially employed to provide expert testimony. Fed. R. Civ. P. 26(a)(2)(C). Instead, "a party is required to disclose the subject matter on which the witness is expected to present evidence and a summary of the facts and opinions to which the witness is expected to testify." *Pineda v. City and County of San Francisco*, 280 F.R.D. 517, 522 (N.D. Cal. 2012) (citing Fed. R. Civ. P. 26(a)(2)(C)). "The Advisory Committee Notes explain that Rule 26(a)(2)(C) mandates 'summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions.'" *Id.* at 522 (citation omitted).

Here, Plaintiffs' disclosure is deficient because it doesn't provide a summary of the opinions and conclusions to which Mr. Kumbalek is expected to testify. Thus, the question before the Court is what consequence should flow from Plaintiffs' failure to meet their disclosure obligations.

Because the circumstances surrounding Mr. Kumbalek's disclosure are nearly identical to Dr. Noordermeer's disclosure, the Court will follow the same approach. The

motion to strike Mr. Kumbalek will be denied, but without prejudice to Defendants' ability to file a renewed motion after they receive more information from Plaintiffs—whether in the form of a report or an amended summary[3]—concerning the substance of Mr. Kumbalek's opinions (or, in any event, after the March 1, 2019 discovery cutoff).

II. <u>The Dispute Concerning Defendants' Discovery Responses</u>

On December 28, 2018, the parties notified the Court of two outstanding discovery disputes. The first (Doc. 113) arises from Defendants' response to the amended discovery requests that Plaintiffs propounded after the issuance of the Court's November 20, 2018 order. In these discovery requests, Plaintiffs asked a series of questions about whether Defendants were utilizing a particular devulcanization process. (*See, e.g.,* Doc. 113-1 at 1:14-17 ["Please describe in detail, including all processes, formulae and chemicals used, your development or use of technology or methods for the devulcanization of rubber or similar polymers through a chemical process using high intensity mixing at a temperature of less than 150 degrees Celsius."].) In response to each such question, Defendants provided a variant of the answer "no such process exists." (Doc. 113-1 at 2:20.)

In their summary of the discovery dispute, Plaintiffs contend these answers are unsatisfactory, that they "are entitled to review the rubber devulcanization technology Defendants are using to determine whether or not it compares to Plaintiffs' trade secrets," and that a protective order can be fashioned to address any risk of misuse. (Doc. 113 at 2.) Meanwhile, Defendants contend they fairly and fully answered the particular questions that were posed to them and that what Plaintiffs are actually doing is "mak[ing] a general demand (divorced from any outstanding discovery request)." (Doc 113 at 3.) They further contend that Plaintiffs cannot assert a trade-secret claim because they revealed their manufacturing processes in a YouTube video available to the public. (*Id*.)

---

[3] Defendants argue for the first time in their reply brief that (1) because Mr. Kumbalek is a contractor, not an employee, of EFG America, LLC, he was required to submit a written report, and (2) Mr. Kumbalek is not qualified to testify as an expert in rubber devulcanization. (Doc. 109 at 5-6.) Because Defendants did not raise these arguments in their original motion, and Plaintiffs have not been given the opportunity to respond, the Court declines to address them now. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Defendants may, however, raise these issues in any renewed motion to strike.

1 | The Court held a telephonic hearing with the parties on January 4, 2019 to address these arguments, orally ruled during the hearing that it would deny Plaintiffs' request to compel further production, and now wishes to supplement that ruling as follows. Defendants repeatedly avowed, during the telephonic hearing, that even though their written discovery responses included various preliminary objections (including overbreadth and that Plaintiffs failed to maintain the confidentiality of their own devulcanization process), their ultimate "no such process exists" answers were unqualified and not subject to those objections. Given this representation, there is no basis to compel Defendants to provide any further response. Plaintiffs are effectively asking the Court to compel Defendants to answer a question (*i.e.,* "what is your devulcanization process?") that is different from, and broader than, the question actually posed in the written discovery requests.

III. The Dispute Concerning Dr. Li

The parties' other discovery dispute (Doc. 114) concerns whether Plaintiffs should be allowed to depose Dr. Li. Plaintiffs contend that, because Dr. Li qualifies as a managing agent of Defendants, they are entitled to depose him. (Doc. 114 at 2.) Defendants contend that Dr. Li doesn't qualify as a managing agent because his "current role" is that of a consultant rather than an employee, that he isn't the person most knowledgeable concerning Plaintiffs' technology, and that he therefore should be permitted to submit an affidavit in lieu of being deposed. (Doc. 114 at 3.)

The Court held a telephonic hearing with the parties on January 4, 2019 to address these arguments and now rules as follows. Whether Defendants may be compelled to produce Dr. Li for a deposition turns on whether Dr. Li qualifies as an officer, director, or managing agent of Defendants. This is because Dr. Li is not present in the United States and is not a citizen or national of the United States. A party seeking to depose such an individual ordinarily must follow the procedures set forth in the Hague Convention, which Plaintiffs haven't attempted to do here. *See generally Verinata Health, Inc. v. Sequenom, Inc.*, 2014 WL 1878822, *2 (N.D. Cal. 2014) ("Plaintiffs do not contend that the

individuals are officers, directors, or managing agents of Sequenom. . . . Accordingly, the Court declines to order Sequenom to produce these individuals for deposition in the United States. If plaintiffs wish to depose these third party foreign witnesses, then they must do so in accordance with the procedures for obtaining a third party deposition under the Federal Rules of Civil Procedure and the Hague Convention."). *See also* 28 U.S.C. § 1783(a) (a federal court may only issue a subpoena to an individual in a foreign country if, *inter alia*, the person is "a national or resident of the United States").

The rules are different, however, when the non-resident foreign national is an officer, director, or managing agent of one of the parties. In that circumstance, the opposing party may seek a deposition of the individual via notice. *See, e.g., Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 169 (S.D.N.Y. 1985) (citation omitted) ("If the person to be deposed is a corporation, the party seeking discovery has the choice either to designate an appropriate individual or to describe the subject matter of the questions to be asked and allow the corporate deponent to designate its own spokesperson familiar with that subject matter. If the party seeking discovery chooses the former option, then the person designated must be 'an officer, director, or managing agent' of the corporate deponent."); *Calderon v. Experian Info. Solutions, Inc.*, 290 F.R.D. 508, 517 (D. Idaho 2013) ("Foreign nationals who qualify as managing agents of a party may be subject to deposition pursuant to notice. However, if the witness sought to be deposed in not an officer, director, or managing agent of a corporate opponent, 'the procedures of the Hague Convention or other applicable treaty must be utilized.'").

Although the Court is sympathetic to Plaintiffs' desire to depose Dr. Li, it doesn't appear that he qualifies as a managing agent. The general rule is that "only current employees can qualify as managing agents for purposes of a Rule 30 deposition notice. A deposition notice generally does not compel the attendance of an entity's . . . former employees." Steven S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 30, Practice Commentary, at 864. "The determination of a deponent's status as a 'managing agent' is determined as of the time of the deposition, not as of the

time when the activities disputed in the litigation occurred." *Rundquist v. Vapiano SE*, 277 F.R.D. 205, 208 (D.D.C. 2011) (citation and internal quotation marks omitted). "However, courts have made exceptions to this general rule . . . when a corporation terminates an officer in light of pending litigation, plans to rehire the individual in another position, or an individual continues to act as a managing agent despite no longer being an employee." *Id.*

Here, the only relevant pieces of evidence before the Court are (1) Dr. Li's employment contract, which shows that he was initially hired as an employee of Eversource Group (one of the Defendants) in November 2016 (*see* Doc. 29 [under seal]), and (2) an affidavit showing that Dr. Li's contract was modified in March 2017, upon the hiring of his daughter, and he has thereafter served as a consultant. (Doc. 114-1 at 1-2.) Plaintiffs have not suggested this contractual modification was part of a bad-faith attempt to shield Dr. Li from being deposed and the timing of the modification is inconsistent with such a suggestion—it occurred before Plaintiffs even filed suit. The affidavit further states that Dr. Li's daughter—who is subject to deposition—is currently responsible for conducting all experiments, performing all research, and managing the lab. Given this record, the Court cannot conclude Dr. Li is presently one of Defendants' managing agents.

Accordingly,

**IT IS ORDERED** that the motion to strike Plaintiffs' expert disclosures (Doc. 92) is **DENIED**, but without prejudice as to Dr. Noordermeer and Mr. Kumbalek.

**IT IS FURTHER ORDERED** that Plaintiffs' request to compel Defendants to provide additional discovery material (Doc. 113) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' request to compel Defendants to produce Dr. Li for a deposition (Doc. 114) is **DENIED**.

Dated this 7th day of January, 2019.

Dominic W. Lanza
United States District Judge