**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Excel Fortress Limited, et al., | No. CV-17-04297-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Vaughn La Verl Wilhelm, et al., | |
| Defendants. | |

Pending before the Court is Defendant Wilhelm's motion for sanctions (Doc 134), which Plaintiffs oppose (Doc. 136). The Court heard oral argument on the motion on June 17, 2019. As explained below, the motion will be granted in part and denied in part and the parties will be ordered to file a joint supplemental brief after meeting and conferring.

## RELEVANT BACKGROUND FACTS

In January 2018, Plaintiffs provided their initial MIDP disclosure. Although this document identified various categories of damages Plaintiffs seek to recover in this case, it failed to provide a computation of those damages:

> Plaintiffs . . . seek monetary damages to be determined at trial with regard to their allegations against Defendants relating to severed and interrupted business relationships, business disruption, lost benefit of their investments, lost potential financing and investment, lost profits, lost competitive advantage, loss of valuable product, costs of delay and harm to reputation in the market, litigation costs, attorneys' fees, and interest. As discovery continues, Plaintiffs will supplement this disclosure with regard to amount of such damages and losses. Plaintiffs refer to documents produced at EFG000001-EFG000272 for evidence of the damages and losses described

herein.

(Doc. 136-2 at 12.)

In February 2018, the scheduling order was issued. (Doc. 55.) It imposed a deadline of December 28, 2018 for the completion of "Fact discovery" and a deadline of March 1, 2019 for the completion of "All discovery." (*Id.* at 2-3.)

In November 2018, as part of the meet-and-confer process arising from a discovery dispute, Plaintiffs' counsel sent an email to Wilhelm's counsel that provided additional information concerning Plaintiffs' damage theories. That email stated in relevant part as follows:

> [A]s to damages and your request for profit documentation. There are no documents as to Plaintiffs' lost profits because they are not yet profitable entities. We do not have lost customer sales yet because, as far as we now know, your clients are not yet in production and have not yet taken customers from us. Our damages claims are and will at trial be primarily based on lost future profits, revenues and customers based on the alleged misappropriation of trade secrets, business disparagement and tortious interference with Dr. Li's contract. We will seek compensation for the lost benefit of the $1 million we paid to Dr. Li to obtain the devulcanization technology that we allege has been misappropriated. We will also seek compensation for the lost time and delay caused to us by Defendant Wilhelm's negligent mixing and creation of unusable [chemicals].

(Doc. 136-4 at 2.)

On February 14, 2019, at the parties' request, the Court issued an order extending the deadline for completing "All discovery" to May 24, 2019. (Doc. 132.)

On February 21, 2019, Wilhelm's counsel sent an email to Plaintiffs' counsel explaining that, although "Plaintiffs' claims against Mr. Wilhelm have been outstanding for almost two years now . . . Plaintiffs have never provided the required calculation of damages." (Doc. 136-8 at 2.) Thus, Wilhelm's counsel asked Plaintiffs' counsel to provide supplemental disclosures on this topic. (*Id.* at 2-3.)

On March 1, 2019, Plaintiffs' counsel provided an "amended and supplemental" version of Plaintiffs' MIDP disclosure. (Doc. 136-10.) This document stated that Plaintiffs were seeking the following seven categories of damages:

- 2 -

| | | |
|---|---|---|
| 1 | (1) | $214,000 in consulting payments to Wilhelm; |
| 2 | (2) | "Loss of the full benefit of the rubber devulcanization technology sold to Excel by Dr. Li and licensed to EFG: some portion of $1 million to be determined by a jury"; |
| 5 | (3) | $261,163 for chemicals that Wilhlem had improperly ordered or misused; |
| 6 | (4) | "Loss of profit from approximately one-year delay created by inability to use modifier compound negligently or intentionally created: $20,800,000 in net profit from 2015 pro formas"; |
| 9 | (5) | "Lost potential funding from Green Injectors: $15 million or to be determined by a jury"; |
| 11 | (6) | "Harm to reputation: $15 million or to be determined by jury"; and |
| 12 | (7) | Pre- and post-judgment interest. |

(*Id.* at 15-16.)

## ANALYSIS

### I. <u>Untimely Disclosure Of Damage Computations</u>

In the first portion of his motion, Wilhelm seeks sanctions under Rule 37 based on Plaintiffs' untimely disclosure of their damage computations. (Doc. 134 at 3-6.) He contends that (1) Plaintiffs were required by General Order 17-08 to disclose their damage computations at the outset of the case, (2) their failure to do so constitutes a violation of Rule 37(b) (which, unlike Rule 37(c), doesn't contain a "substantially justified and harmless" safe harbor), (3) in any event, the violation wasn't justified because Plaintiffs' damage theories have always been within their own control, (4) the violation wasn't harmless because he would have retained a damages expert and/or sought additional discovery if he knew Plaintiffs were seeking, *inter alia*, $20.8 million in lost profits, and (5) the only appropriate sanction under Rule 37 is to strike the five categories of damages that were computed for the first time in the March 2019 "supplemental" disclosure.[1]

---

[1] Specifically, Wilhelm seeks to exclude (1) the claim for $20.8 million in lost profits, (2) the claim for $15 million in reputational harm, (3) the claim for "some portion" of the $1 million paid to Dr. Li, (4) the disgorgement claim concerning the $214,000 in consulting payments, and (5) the claim for $261,163 of wasted chemicals. (Doc. 134 at 6.) In contrast,

- 3 -

In their response (Doc. 136 at 2-6, 10-13), Plaintiffs contend their initial MIDP disclosure in January 2018 was adequate because it identified the categories of damages they intend to seek and also provided a cross-reference to the discovery materials supporting those claims. Plaintiffs also note that, after Wilhelm received this initial disclosure, he didn't "complain that the disclosures were inadequate or violated either Rule 37 or the Court's MID[P] requirements." Finally, Plaintiffs contend their March 2019 supplemental disclosure, which they provided soon after Wilhelm asked for supplementation, doesn't include any "new categories . . . that had not already been disclosed in . . . the original MID[P] or the November 2018 email." Given this factual backdrop, Plaintiffs identify three reasons why the Court should decline to impose Rule 37 sanctions: (1) Wilhelm never filed a motion to compel under Rule 37(a), which is a prerequisite to seeking Rule 37 sanctions; (2) all of the figures identified in the March 2019 supplemental disclosure were contained in discovery materials produced before the discovery cutoff; and (3) Wilhelm hasn't suffered any harm because he still has the ability to depose their president/CEO and he's long been aware of the amount of damages being sought.

In his reply (Doc. 139 at 2-5), Wilhelm argues that (1) Plaintiffs' initial MIDP disclosure was inadequate because General Order 17-08 specifically requires a "computation" of damages, not a general description of the categories of damages being sought, (2) a party cannot sidestep this burden by providing a vague cross-reference to thousands of pages of discovery, (3) the violation wasn't justified because "Plaintiffs do not and cannot explain why a computation and identification of these specific damages could not have been provided in January 2018 when it was due," (4) the violation wasn't harmless because he fashioned his discovery strategy around Plaintiffs' initial disclosure, so a last-minute deposition won't cure anything, and (5) the calculations contained in the March 2019 version of Plaintiffs' MIDP disclosure can't be characterized as a

---

Wilhelm doesn't seek to exclude (on late disclosure grounds) (1) the claim for $15 million in lost funding and (2) the claim for pre- and post-judgment interest.

"supplement" because that label only applies to new information that was unavailable to the disclosing party at the time of the original disclosure.

As an initial matter, the Court agrees with Wilhelm that Plaintiffs' original disclosure was inadequate.[2] General Order 17-08 requires each party, at the outset of the case, to "provide a *computation* of each category of damages claimed by you." *Id.* § B(5) (emphasis added).[3] Plaintiffs failed to do so here—their initial MIDP disclosure in January 2018 simply identified, in broad strokes, some of the categories of damages they intended to pursue at trial without attempting to compute those damages or assign even a rough dollar-figure estimate to them. This was insufficient. Although "the Rules do not require in every case that a complete and unchangeable damages computation be presented at the outset of the case," *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017), the initial disclosure still should, at a minimum, provide a dollar-figure estimate of the various categories of damages being sought and provide some explanation for how those figures were calculated.[4]

The inadequacy of Plaintiffs' initial disclosure, however, doesn't inexorably lead to the conclusion that Plaintiffs' damage claims must be stricken. Wilhelm has been aware

---

[2] During the hearing on June 17, 2019, Plaintiffs' counsel conceded the initial MIDP disclosure was inadequate because it didn't contain any computations. This concession differs from the position Plaintiffs took in their written response to the motion.

[3] Federal Rule of Civil Procedure 26(a)(1)(A)(iii) similarly provides that "a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party . . . ." Accordingly, the Court has relied on case law construing Rule 26(a)(1)(A)(iii) for purposes of this order.

[4] *See, e.g., Song v. Drenberg*, 2019 WL 1949785, *2 (N.D. Cal. 2019) ("With respect to the damages computation requirement, plaintiffs say that it is not possible to provide a 'specific dollar-figure calculation of damages' at this time. Rule 26(a)(1)(A)(iii) does not require damages to be calculated with precision. However, it does require a party to disclose its present assessment of the amount of damages in light of the information currently available to that party. For example, if [plaintiff] contends he has lost business opportunities as a result of [defendant's] conduct, he must disclose the value of that loss sufficiently so that [defendant] may understand his potential exposure. At a minimum, plaintiffs must describe on a claim-by-claim basis the nature of the damages claimed (e.g. actual damages), and how such damages may be calculated (e.g. estimated value of specific lost business opportunities).") (citations omitted); *City & Cnty. of S.F. v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) (dollar-figure estimates are necessary so defendants can "understand the contours of [their] potential exposure and make informed decisions as to settlement and discovery").

of the deficiency of Plaintiffs' damages-related disclosures since the moment he received Plaintiffs' MIDP disclosure in January 2018. A truly aggrieved defendant would have, at that point, immediately sought supplementation from his adversary and/or sought relief from the court. The records that Wilhelm provided in support of the sanctions motion, however, show that he didn't raise any concerns about the sufficiency of Plaintiffs' damages-related disclosures until February 2019—13 months after they were initially provided.[5] It also appears that Plaintiffs' counsel promptly addressed those concerns and provided detailed computations to Wilhelm within 10 days of the request.

Under these circumstances, it would be improper to strike Plaintiffs' damage claims due to untimely disclosure. In *Williams v. Boulevard Lines, Inc.*, 2013 WL 5652589 (S.D.N.Y. 2013), the court encountered a similar situation. There, the plaintiff's initial Rule 26(a) disclosure merely identified the categories of compensatory damages being sought and "provided no dollar figures or computation of any kind to quantify the damages he was seeking." *Id.* at *4. Nevertheless, the defendant didn't object at the time and proceeded to engage in discovery. After discovery closed, the defendant moved to strike the damage claims based on inadequate disclosure. In response, the plaintiff "specified . . . for the first time" that he was seeking $6 million in compensatory damages. *Id.* Although the district court concluded the plaintiff's initial disclosures were "patently deficient" (because they didn't include any dollar-figure computations) and that his later disclosures were untimely, it declined to impose the "harsh sanction of preclusion" with respect to his claim for compensatory damages because "it is now more than three years since Plaintiff served his first Rule 26(a) disclosures listing categories of such damages," yet "Defendants never complained of any deficiency until this point" and never "requested clarification from Plaintiff." *Id.* at *6-7.

Here, similarly, although Plaintiffs' initial disclosure in January 2018 was

---

[5] During the hearing, Wilhelm's counsel asserted that additional requests for clarification and supplementation were made before February 2019. However, no documentation of those requests was provided to the Court in support of the sanctions motion.

inadequate, this inadequacy should have prompted Wilhelm to seek clarification. After all, "the initial disclosure requirements are meant to provide necessary information to provide a balanced playing field" and "should not be viewed as procedural weapons through which parties seek to gain a tactical litigation advantage." *Silvagni,* 320 F.R.D. at 243. It would create perverse incentives to allow Wilhelm to say nothing for 13 months, then make a request for supplementation after discovery has closed, and then seek what would effectively be case-terminating sanctions after Plaintiffs complied with his supplementation request. Thus, even assuming for the sake of argument that the Court *could* strike Plaintiffs' damage claims as a sanction under Rule 37(b) despite the absence of an earlier motion to compel and without regard to whether Plaintiffs' violation was substantially justified or harmless,[6] the Court declines in its discretion to do so. *Ackerman v. PNC Bank, Nat. Ass'n*, 2014 WL 258565, *2 (D. Minn. 2014) ("This Court rejects Plaintiff's contention that [Rule] 37(b)(2)(A) 'dictates' that sanctions 'must be awarded' against a party who fails to obey a discovery order. Instead, Rule 37(b)(2)(A) vests courts with broad discretion to issue sanctions for failure to comply with discovery orders. It provides that the court in which the action is pending '*may* issue further just orders.'").[7]

II. Misrepresentations Concerning "Lost Profits"

One of the categories of damages identified in Plaintiffs' March 2019 disclosure is a claim for $20.8 million in "[l]oss of profit," which is alleged to have arisen "from [an] approximately one-year delay created by inability to use modifier compound negligently or intentionally created." (Doc. 136-10 at 15.)

---

[6] Wilhelm argues that, because General Order 17-08 is a court order requiring the disclosure of damages computations, he may request sanctions under Rule 37(b) instead of seeking sanctions under Rule 37(c). Wilhelm further contends this distinction is meaningful for two reasons: (1) "Rule 37(b) does not have the 'substantially justified and harmless' safe harbor provided in Rule 37(c)" (*see* Doc. 134 at 5), and (2) a party need not file a motion to compel under Rule 37(a) before seeking sanctions under Rule 37(b) (*see* Doc. 139 at 2).

[7] In the portion of his brief concerning the timeliness of Plaintiffs' damages-related disclosures, Wilhelm also asks for permission to file an early summary judgment motion on Plaintiffs' claim for $15 million in lost funding. (Doc. 134 at 6.) This request will be denied. The $15 million claim is one of the two categories of damages that Wilhelm doesn't contend was untimely disclosed. It's therefore unclear why he chose to tuck this request into the portion of his brief seeking Rule 37 sanctions.

In addition to seeking exclusion of this claim under Rule 37 as a sanction for late disclosure, Wilhelm also argues the Court should strike this claim pursuant to its inherent authority to punish misrepresentations. (Doc. 134 at 7-8.) Specifically, Wilhelm argues that, when his counsel asked Plaintiffs' counsel in November 2018 to provide damages-related documentation, Plaintiffs' counsel stated "[t]here are no documents as to Plaintiffs' lost profits" and assured him that "[o]ur damages claims are and will at trial be primarily based on lost future profits . . . ." (*Id.*, citing Doc. 136-4 at 2.) Wilhelm contends he "reasonably relied on these representations" when choosing "not to disclose any expert regarding that issue." (*Id.*)

In response, Plaintiffs argue that the November 2018 email "was not intended to exclude any category previously disclosed. It was only meant to point out, as it did, that there were no lost customer profits taken by Defendants as of that date. It specifically exempted and reinforced Plaintiffs' intention to seek 'future lost profits,'" which is what the $20.8 million represents. (Doc. 136 at 13-14.)

In his reply, Wilhelm argues the $20.8 million damage claim can't be characterized as a claim for "future" profit because it arose during the 2015-16 timeframe. (Doc. 139 at 7-8.)

Wilhelm's frustration is understandable. In the November 2018 email, Plaintiffs' counsel assured Wilhelm that (1) "[o]ur damages claims are and will at trial be primarily based on lost future profits" and (2) there were "no documents" that could support Plaintiffs' claim for "lost profits." These representations cannot be reconciled with Plaintiffs' current position, which is that (1) Plaintiffs are entitled to recover $20.8 million in profits they claim should have been earned between 2015-16 (*i.e.,* past profits, not future profits) and (2) the key document supporting this claim is a *pro forma* spreadsheet that has been produced during the discovery process.

Nevertheless, it should be noted that the November 2018 email also stated that Plaintiffs intended to seek "compensation for the lost time and delay caused to us by Defendant Wilhelm's negligent mixing and creation of unusable [chemicals]." (Doc. 136-

- 8 -

4 at 2.) This language seems to encompass the $20.8 million claim—Plaintiffs believe they lost $20.8 million because Wilhelm's alleged negligence, while working for them, resulted in a wasted year of lost sales.

Given this backdrop, the Court doesn't view the November 2018 email from Plaintiffs' counsel as some sort of intentional attempt to mislead. It is best viewed as a poorly-written email whose ambiguity created confusion. It would be an abuse of the Court's inherent authority to strike the $20.8 million damage claim under these circumstances. *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1189 (9th Cir. 2012) ("'[S]anctions imposed under the district court's inherent authority require a bad faith finding.'") (citation omitted).

Furthermore, other options are available here—short of the drastic sanction of striking a $20.8 million damage claim—to make Wilhelm whole. For example, Wilhelm's primary complaint is that the November 2018 email caused him to forego hiring an expert to challenge the $20.8 million damage claim. This is something that can be fixed. Wilhelm also may need to conduct additional fact discovery, which is another thing that can be fixed.

The Court further notes that, during the hearing, Wilhelm persuasively argued that Plaintiffs may not be able to survive summary judgment with regard to the $20.8 million damage claim—Plaintiffs don't have any experts to support this claim and it seems questionable whether a multi-million dollar claim for lost business profits could be based on a single entry in an Excel spreadsheet.

For these reasons, the parties are ordered to meet and confer about (1) whether the $20.8 million damage claim is one that could survive summary judgment and (2) what additional steps Wilhelm would need to pursue to cure the prejudice arising from Plaintiffs' misleading November 2018 email, how much such steps would cost, and who should bear the associated expense. As discussed, the Court is inclined to award costs and expenses to Wilhelm should additional discovery concerning this claim be required. However, Plaintiffs may avoid any responsibility for such costs by agreeing that the $20.8 million claim can't survive summary judgment and therefore agreeing to dismiss that claim.

III. <u>Misrepresentations Concerning Payments To Dr. Li</u>

Wilhelm also asks the Court to strike a different category of damages pursuant to its inherent authority to punish misrepresentations: Plaintiffs' claim for $1 million in past payments to Dr. Li. (Doc. 134 at 8-11.) Wilhelm notes that Plaintiffs' counsel repeatedly stated during the discovery process that these payments had been made by Excel Fortress, and also produced misleadingly-redacted bank records in December 2018 that suggested the payments had been made by Excel Fortress, yet when Plaintiffs' counsel finally produced the unredacted records, they showed the payments had actually been made by bank accounts held by a cluster of different entities (EFG, EF Global Corp., International Tejas Operating LLC, and Enviropark Texas LLC). (*Id.*) Wilhelm argues these misrepresentations were prejudicial because (1) he "was blocked from pursuing additional discovery into these payments" and (2) "[t]he fact that payments for the technology came from entities other than Excel Fortress raises issues about Excel Fortress's standing as a Plaintiff and standing to pursue damages related to these payments." (*Id.* at 11.)

In response, Plaintiffs acknowledge their counsel's representations on this issue throughout the discovery process were inaccurate but contend the mistake was "not intentional" and arose due to "an incorrect assumption" by counsel. (Doc. 13 at 14-15.) Plaintiffs also accuse Wilhelm of trying "to make a mountain out of a molehill" because the identity of the party that ultimately paid Dr. Li doesn't matter—all that matters is that he got paid to do work on behalf of Excel Fortress. (*Id.*)

In his reply, Wilhelm argues that (1) Plaintiffs' "incorrect assumption" argument isn't exonerating because it shows that Plaintiffs' counsel didn't even bother to verify the accuracy of Plaintiffs' position before making representations to the Court and opposing counsel, (2) Plaintiffs' claim of an innocent mistake is belied by the fact they withheld the key portions of the bank records for months, which is suggestive of an intent to deceive, and (3) the delayed disclosure was harmful because "[b]ased on the information now known, Mr. Wilhelm would have hired an expert to opine that Excel Fortress is nothing but a sham entity and that [Excel's president] is fraudulently using proceeds from investors

in EFG America to make payments on behalf of Excel Fortress without the knowledge or consent of his investors." (Doc. 139 at 6-7.)

The facts concerning the Dr. Li payments are troubling. Plaintiffs' counsel made repeated misstatements that were, at best, the product of sloppiness and negligence. These were not the only inaccurate statements Plaintiffs' counsel has made to the Court and to Wilhelm's counsel during this case. Additionally, Plaintiffs initially produced an incomplete set of financial records, which had key pages removed, and only produced the complete set—which revealed that Plaintiffs' counsel's earlier representations were false—after Wilhelm repeatedly objected. This chronology creates uncertainty as to whether the entire episode can be chalked up to a series of innocent mistakes.

On the other hand, it's not entirely clear whether (or to what extent) Wilhelm was prejudiced by this episode. There are two plaintiffs in this case: Excel Fortress and EFG. In Count 3 of the second amended complaint, each Plaintiff has asserted a claim against Wilhelm for "business disparagement" premised on the allegation that "Wilhelm made false and disparaging statements to . . . Dr. Li[] regarding the operations, financing, and reputation of Excel Fortress and EFG." (Doc. 62 ¶¶ 69-73.) Similarly, in Count 4, each Plaintiff alleges Wilhelm "tortiously interfere[d]" with its "contractual and business expectancy relationships," which would presumably include a contractual relationship with Dr. Li. (*Id.* ¶¶ 76-81.) Because *both* Plaintiffs have asserted claims against Wilhelm to recover past payments made to Dr. Li, it's unclear why the newly-disclosed bank records—which show that the payments to Dr. Li came from bank accounts held in part by EFG, rather than Excel Fortress's bank account—are particularly meaningful.

During the hearing, Wilhelm argued the identity of the payor is crucial because EFG wasn't allowed to use investor money to make payments to Dr. Li, so EFG was committing fraud by making the payments (and the presence of such an underlying fraud would preclude EFG from asserting a damage claim in this case). In response, Plaintiffs argued that EFG had a licensing agreement with Excel Fortress that made it permissible for EFG to pay Dr. Li's salary.

Given all of this, the Court concludes—albeit without some pause—that the misstatements concerning the Dr. Li payments were not the product of "bad faith." And because there was no bad faith, it would be inappropriate to strike the $1 million damage claim pursuant to the Court's inherent authority.

The Court will, however, order other relief to ensure Wilhelm is made whole. Accordingly, the parties are ordered to meet and confer about what additional steps Wilhelm would need to pursue to cure the prejudice arising from Plaintiffs' misleading statements and disclosures concerning the Dr. Li payments, how much such steps would cost, and who should bear the associated expense. As discussed, the Court is inclined to award costs and expenses to Wilhelm should additional discovery concerning this claim be required.

Accordingly, **IT IS ORDERED** that:

(1) Wilhelm's motion for sanctions (Doc. 134) is **granted in part and denied in part**;

(2) The parties must meet and confer to address (1) whether the $20.8 million damage claim is one that could survive summary judgment; (2) what additional steps Wilhelm would need to pursue to cure the prejudice arising from Plaintiffs' misleading November 2018 email, how much such steps would cost, and who should bear the associated expense; and (3) what additional steps Wilhelm would need to pursue to cure the prejudice arising from Plaintiffs' misleading statements and disclosures concerning the Dr. Li payments, how much such steps would cost, and who should bear the associated expense; and

(3) By **July 8, 2019**, the parties must file a joint memorandum not exceeding 17 pages in length that addresses the aforementioned issues.

Dated this 17th day of June, 2019.

_____
Dominic W. Lanza
United States District Judge

- 12 -