**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Excel Fortress Limited, et al., | No. CV-17-04297-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Vaughn La Verl Wilhelm, et al., | |
| Defendants. | |

Pending before the Court is Defendant Vaughn Wilhelm's motion for attorneys' fees and costs (Doc. 167), which Plaintiffs oppose (Doc. 174). For the following reasons, the motion will be granted in part and denied in part. The Court will award $23,275 in attorneys' fees and $1,417.76 in costs, to be assessed jointly and severally against Plaintiffs and Plaintiffs' counsel.

**BACKGROUND**

This lawsuit was filed in April 2017. (Doc. 1.) In a nutshell, the operative complaint (Doc. 62) alleged that five defendants—Wilhelm, Ryan McHugh, Eversource Capital LP, Eversource Group, LP, and Eversource Global Technology LLC—misappropriated Plaintiffs' trade secrets related to the "devulcanization" of rubber, improperly hired Plaintiffs' former chief scientist in China, and tortiously interfered with Plaintiffs' contractual and business relationships. (*See generally* Doc. 79 at 2-3.) However, Plaintiffs later agreed to voluntarily dismiss many of these claims and defendants. (Docs. 130, 173.)

On March 8, 2019, the one remaining defendant (Wilhelm) filed a motion for

sanctions under Rule 37. (Doc. 134.) The motion was filed in response to Plaintiffs' production, one week earlier, of a "supplemental" MIDP disclosure that greatly expanded Plaintiffs' damage theories. In a nutshell, Wilhelm argued that (1) this late disclosure was improper because Plaintiffs were required to disclose their damage computations at the outset of the case, not on the eve of the discovery cutoff, and (2) this late disclosure was prejudicial because, had Wilhelm been aware of Plaintiffs' various damage theories at the start of the case, he would have conducted additional discovery and/or hired additional experts. As a remedy, Wilhelm argued that "sanctions in the form of exclusion of any evidence supporting damages identified in Categories 1, 3, 4, 5, and 6 are appropriate." (*Id.* at 6.) In the final paragraph of the motion, Wilhelm also included a request for "monetary sanctions in the form of attorneys fees incurred in briefing this motion" and "any other relief the Court deems to be just and proper." (*Id.* at 11.)

On June 17, 2019, after hearing argument from the parties, the Court issued an order that granted in part, and denied in part, Wilhelm's motion. (Doc. 151.) Although the Court concluded that Plaintiffs' initial disclosure in January 2018 was inadequate, the Court also noted that Wilhelm "didn't raise any concerns about the sufficiency of Plaintiffs' damage-related disclosures until February 2019—13 months after they were initially provided" and that "Plaintiffs' counsel promptly addressed those concerns and provided detailed computations . . . within 10 days of the request." (*Id.* at 5-6.) The Court next held that, although Plaintiffs' counsel made an array of inaccurate and misleading statements to Wilhelm's counsel during the discovery process about two particular categories of damages, those statements should not be viewed "as some sort of intentional attempt to mislead" (*id.* at 9) and "were not the product of 'bad faith'" (*id.* at 12). Given this backdrop, the Court concluded "it would be improper to strike Plaintiffs' damage claims due to untimely disclosure" and that "other options are available here . . . to make Wilhelm whole." (*Id.* at 6, 9.) As examples of such "other options," the Court noted that it might be appropriate (1) to retroactively extend the expert-disclosure deadline so Wilhelm could hire a damages expert, (2) to allow Wilhelm to conduct "additional fact discovery"

concerning the late-disclosed damage theories, and/or (3) to require Plaintiffs to pay for the costs associated with any additional discovery. (*Id.* at 9, 12.) The Court thus ordered the parties to meet-and-confer about, *inter alia*, "what additional steps Wilhelm would need to pursue to cure the prejudice arising from [the misleading statements], how much such steps would cost, and who should bear the associated expense." (*Id.* at 12.)

On July 8, 2019, the parties filed a "Joint Written Memorandum Regarding Remedies." (Doc. 159.) This document reported that Plaintiffs had decided, following the issuance of the June 17 order, to voluntarily dismiss all but one of their damage claims (the negligence claim against Wilhelm for purportedly wasting chemicals through negligent mixing). Nevertheless, Wilhelm argued that Plaintiffs' dismissal of these claims would not make him whole and stated he should be awarded four categories of expenses—specifically, the fees and costs he incurred (1) when briefing and arguing the Rule 37 motion, (2) when responding to Plaintiffs' counsel's misleading statements, (3) when preparing a never-filed summary judgment motion on one of Plaintiffs' now-withdrawn damage claims, and (4) when pursuing discovery concerning some of Plaintiffs' now-withdrawn damage claims. (*Id.* at 3.)

On July 25, 2019, the Court issued an order that granted in part, and denied in part, Wilhelm's request. (Doc. 164.) This order concluded that Wilhelm was entitled to recover the first category of expenses mentioned in the joint memorandum—the costs and fees he incurred when briefing and arguing the Rule 37 motion. (*Id.* at 3 ["[T]he Court already granted [Wilhelm's] Rule 37 motion in part and Plaintiffs subsequently agreed to abandon their late-disclosed damage theories. All of this suggests that [Wilhelm] was justified in seeking relief under Rule 37, that Plaintiffs' conduct wasn't substantially justified, and that it wouldn't be unjust to require Plaintiffs to reimburse [Wilhelm] for the cost of seeking relief."].) The order further directed Wilhelm to file a separate motion identifying the specific fees and costs to which he believed he was entitled. (*Id.* at 4-5.)

…

…

# ANALYSIS

A. The Parties' Arguments

Wilhelm requests a total of $27,529.50 in fees and $2,599.16 in costs. (Docs. 167, 168.) In support of his fee request, Wilhelm has submitted timesheet entries showing that one of his attorneys, John McHugh, spent 39.9 hours on the Rule 37 motion at a rate of $500 per hour; that a second attorney, William Thomas, spent 12.7 hours on the Rule 37 motion at a rate of $335 per hour; and that a third attorney, Candice McHugh, spent 13.3 hours on the Rule 37 motion at a rate of $250 per hour. (Doc. 168-3.) Wilhelm argues these hourly rates are reasonable for the Phoenix market (even though his attorneys are not based in Arizona) because (1) they are similar to, and in some instances fall below, the rates approved in other District of Arizona cases for similarly-experienced attorneys, (2) this case initially involved complex state and federal trade-secret claims and a demand for nine-digit damages, so it was reasonable to retain counsel who "specialize in high-figure complex commercial litigation and trade secret matters," and (3) his attorneys have submitted declarations verifying that, "in spending time on this matter, [they] were precluded from spending that time on matters for other clients who paid the same rates." (Doc. 168 at 4-5.) Wilhelm has also submitted a declaration from a partner at a Phoenix law firm, who avers that "[t]he rates requested in this application are . . . in line with rates charged in the Phoenix market by private attorneys of an ability and reputation comparable to that of prevailing counsel with respect to legal work on similar complexity." (Doc. 168-9 ¶ 4.) As for the number of hours expended, Wilhelm argues they were reasonable because (1) they are supported by contemporaneous billing records, (2) his attorneys have submitted declarations averring they exercised billing judgment, and (3) his attorneys' work on the Rule 37 motion was obviously effective, because it prompted Plaintiffs to dismiss all but one of their claims and to withdraw 99.5% of the damages they previously sought. (*Id.* at 5-6.) In support of his cost request, Wilhelm has submitted a spreadsheet showing that all three of his attorneys flew to Phoenix to attend the June 17 hearing. (Doc. 168-4.) He seeks reimbursement for the airfare, lodging, meals, parking, and ground transportation

associated with their travel, as well as for the meal of a former co-defendant who attended the hearing. (*Id.*) Finally, Wilhelm argues that Plaintiffs' counsel should be held jointly and severally liable for the overall award because counsel exacerbated the situation by arguing at length in the written response to the Rule 37 motion that counsel's initial damage disclosures were adequate, only to abandon this position during the hearing. (Doc. 168 at 7-8.)

In their response (Doc. 174), Plaintiffs take issue with several aspects of Wilhelm's request. First, Plaintiffs observe that, in the joint memorandum, Wilhelm estimated that he would be requesting a total of just over $19,000 in fees and costs, yet Wilhelm is now requesting over $30,000 in fees and costs without any explanation for why the figure has increased by 55%. (*Id.* at 3-4.) Second, Plaintiffs argue the fee request is overbroad because the Court denied the Rule 37 motion in significant part (*i.e.,* by not accepting Wilhelm's invitation to strike Plaintiffs' damage claims as a remedy for the discovery violations), yet Wilhelm is seeking reimbursement for 12.3 hours of attorney time spent researching and developing the unsuccessful portions of the Rule 37 motion. (*Id.* at 4-5.) Third, Plaintiffs challenge the $500 hourly rate charged by Mr. McHugh, arguing it is "unreasonable in the Arizona community" because Mr. McHugh is based in Denver and works at a law firm that has fewer attorneys than the law firms whose $500+ hourly rates have been approved in other District of Arizona cases. (*Id.* at 5-7.) Plaintiffs contend that a more reasonable hourly rate for Mr. McHugh's work would be $345, which is "consistent with the State Bar of Arizona's *2016 Economics of Law Practice in Arizona* survey of hourly rates for partners with 10 years of practice, like Mr. McHugh." (*Id.* at 7.) Fourth, Plaintiffs challenge the $250 hourly rate charged by Ms. McHugh, arguing that her timesheet entries show that her "work was primarily limited to simple work that could have been performed by a paralegal" and that her area of specialization (water law) is irrelevant to the issues in this case. (*Id.* at 7-8.) Fifth, Plaintiffs argue the overall number of hours expended by Wilhelm's attorneys on the Rule 37 motion—66 hours—was unreasonable because the motion "[w]as [n]ot [c]omplicated," "the expenditure of nearly 70 hours of

attorney time for a single motion is facially unreasonable," and it was unnecessary and duplicative for all three of Wilhelm's attorneys to work on the motion and attend the hearing. (*Id.* at 8-11.) Sixth, Plaintiffs challenge several of the time entries as being "insufficiently descriptive" under Local Rule 54.2(e)(2). (*Id.* at 11-13.) Seventh, Plaintiffs argue the cost request is excessive because it wasn't necessary for all three attorneys to attend the hearing. (*Id.* at 13.) Eighth, Plaintiffs argue their counsel shouldn't be held jointly and severally liable because (1) the Court expressly declined, in its previous order, to make a bad-faith finding as to counsel, (2) an award of Rule 37 sanctions against counsel must be based on misconduct during the discovery process, but the alleged misconduct here arose during the hearing, and (3) counsel did not make the sort of concession alleged in Wilhelm's motion. (*Id.* at 13-15.)

In his reply—which exceeds the page limits applicable to reply briefs, *see* LRCiv 7.2(e)(2)—Wilhelm argues that Plaintiffs' first objection is baseless because the $19,000 figure was only an estimate and didn't include the 6.6 hours of time later expended on related issues. (Doc. 177 at 2-3.) As for the second objection (overbroad fee request), Wilhelm argues, *inter alia*, that all of the entries in the spreadsheet involve time spent preparing and/or arguing the Rule 37 motion and the challenged entries were actually related to the fee request, not the other remedies that weren't awarded. (*Id.* at 3-4.) As for the third objection (Mr. McHugh's $500 hourly rate), Wilhelm notes that Plaintiffs didn't submit any evidence to controvert the declaration from Mr. Matura concerning Phoenix billing practices, argues that the survey cited in Plaintiffs' brief is flawed and has been rejected by other courts, and contends it would be irrational to conclude "that the size of the firm (rather than the experience of counsel) determines the market rate." (*Id.* at 4-5.) As for the fourth objection (Ms. McHugh's $250 hourly rate), Wilhelm contends that the rate is actually "[s]ignificantly [b]elow [m]arket" given Ms. McHugh's two decades of experience, that Ms. McHugh's participation was necessary in light of her institutional knowledge of the case, that Plaintiffs have improperly rephrased or misquoted her timesheet entries in an attempt to minimize the complexity of her work, and that Plaintiffs

haven't submitted any evidence demonstrating her rate is unreasonable. (*Id.* at 5-7.) As for the fifth objection (unreasonable number of hours expended), Wilhelm argues that the Rule 37 motion involved extensive briefing, that it was reasonable to expend a significant amount of time on the motion given the amount of damages being sought, and that it was reasonable to have multiple attorneys work on the motion and attend the hearing in light of Plaintiffs' counsel's track record of making inaccurate statements during hearings. (*Id.* at 7-10.) As for the sixth objection (inadequate billing entries), Wilhelm argues that the challenged entries are similar to entries that have been approved in other District of Arizona cases and that the entries are, in any event, sufficiently descriptive. (*Id.* at 10-12.) As for the seventh objection (costs), Wilhelm again defends his decision to have multiple attorneys attend the hearing and further argues it was reasonable to seek reimbursement for the meal of a former co-defendant who attended the hearing because the former co-defendant "had an obvious interest in the proceedings (particularly since Plaintiffs refused to dismiss their baseless claims [against him] with prejudice)." (*Id.* at 12-13.) As for the eighth objection (joint and several liability), Wilhelm argues that Rule 37 doesn't require a finding of bad faith before sanctions may be imposed against counsel and that counsel here "participated in the sanctionable conduct . . . by preparing and signing the inadequate MIDR [damage disclosure]" and by "persist[ing] in arguing that the January MIDR complied with General Order 17-08." (*Id.* a 13-14.)

B.  Discussion

The Court concludes that most of Plaintiffs' objections are baseless and will thus grant Wilhelm's request in significant part.

First, it is irrelevant that Wilhelm's initial estimate of his costs and fees was too low. An estimate is just that, an estimate. To the extent Plaintiffs believe Wilhelm's ultimate request was inflated, the Court has addressed Plaintiffs' specific objections below.

Second, the fee request is not overbroad. The Court previously determined that Wilhelm was entitled, under Rule 37(b)(2)(C), to an award of attorneys' fees and costs intended to compensate him for "the cost of seeking relief" under Rule 37. (Doc. 164 at

3.) All of the time entries for which Wilhelm now seeks reimbursement (Doc. 168-3) fall within this umbrella.

Third, the hourly rates of Mr. McHugh ($500) and Ms. McHugh ($250) are reasonable.[1] "The prevailing market rate in the community is indicative of a reasonable hourly rate. The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (citation and footnote omitted). Here, the uncontradicted declaration from Mr. Matura establishes that the rates charged by Mr. McHugh and Ms. McHugh are reasonable rates in the Phoenix market for attorneys of comparable skill and experience, and Mr. McHugh also submitted a declaration averring that other clients pay him $500 per hour. This evidence was sufficient to meet Wilhelm's burden of proving the reasonableness of the disputed hourly rates. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) ("Welch satisfactorily bore her burden of demonstrating that $375 to $400 per hour is in line with the prevailing market rate by submitting two pieces of evidence: (1) rate determinations in other cases litigated by the Kantor & Kantor firm awarding fees at rates between $300 and $375 per hour; and (2) declarations from comparable ERISA lawyers attesting that the market sustains a rate above $400 per hour."). *See also Kaufman v. Warner Bros. Entm't Inc.*, 2019 WL 2084460, *12-13 (D. Ariz. 2019) (concluding that hourly rates of $552 and $505 were reasonable and canvassing other Arizona cases reaching similar conclusions). The Court further agrees with Wilhelm that the size of an attorney's law firm doesn't necessarily dictate what the attorney may reasonably charge— some very skilled, capable, and sought-after attorneys work at small firms—and that it was reasonable for Wilhelm to retain specialists like Mr. McHugh and Ms. McHugh given the amount of damages Plaintiffs were seeking. Finally, the billing entries from Ms. McHugh do not reflect mere paralegal-level work. (*See, e.g.*, Doc. 168-3 at 4 [June 12, 2019 time

---

[1] Plaintiffs have not challenged the $335 hourly rate of Mr. Thomas.

entry from Ms. McHugh: "Review and evaluate EFG response (.4); t/c with J. McHugh regarding additional false statements in Plaintiffs' response and option to respond to same in light of Court's order not allowing a reply (.2)."].)

Fourth, although 66 hours is a lot of time to spend litigating a single motion, the Court cannot conclude it was categorically unreasonable for Wilhelm's attorneys to expend that much time here. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992) ("The district court has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, we defer to its determination, including its decision regarding the reasonableness of the hours claimed by the prevailing party."). The Rule 37 analysis was very fact-intensive and required Wilhelm to canvass over two years' worth of developments in a heavily-litigated case. It wasn't something that could be thrown together quickly, and Wilhelm's attorneys have submitted declarations averring that they exercised billing judgment when deciding how to proceed. It's also highly relevant that Wilhelm's challenged litigation decisions occurred in a case in which Plaintiffs were seeking eight- or nine-digit damages. This context helps explain why it was reasonable to spend more time on this Rule 37 motion than might ordinarily be spent on such motions. *Bankston v. State of Ill.*, 60 F.3d 1249, 1256 (7th Cir. 1995) ("The standard is whether the fees are reasonable in relation to the difficulty, *stakes*, and outcome of the case.") (emphasis added).

Plaintiffs also contend it was unreasonable for Wilhelm to have three different attorneys work on the motion and attend the hearing. This argument presents a close call, in part because Wilhelm has identified a legitimate, case-specific reason why such staffing was necessary here—the need for attorneys with deep institutional knowledge of the case to be present in case any additional inaccurate statements were made by opposing counsel during the hearing. *Cf. Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286-87 (9th Cir. 2004) (noting that "courts ought to examine with skepticism claims that several lawyers are needed to perform a task" but suggesting it would be reasonable for multiple attorneys to attend a hearing if "they are there because their assistance is or may be needed by the lawyer arguing the case, as when a judge asks 'where is that in the record,' and one

1  lawyer must frantically flip through pages and find the reference to hand to the lawyer
2  arguing" or if "a lawyer who has worked on the case and will be working on it subsequently
3  may need to observe argument to judge how to proceed later"). The Court concludes, in
4  its discretion, that it was reasonable for two attorneys to work on the motion and attend the
5  hearing, but not three. Accordingly, the time entries from the third attorney, Mr. Thomas,
6  will be disallowed (those entries total $4,254.50 in fees).

7  Fifth, the Court disagrees with Plaintiffs' objections to the sufficiency of the
8  disputed billing entries. It is clear that all of the entries at issue relate to the Rule 37 motion.

9  Sixth, most of Plaintiffs' cost-related objections relate to the fact that three attorneys
10 traveled to Phoenix for the hearing. As discussed above, the Court concludes the presence
11 of two attorneys was reasonable. Accordingly, the costs associated with the attendance of
12 the third attorney, Mr. Thomas, will be disallowed (those costs total $1,136.30).
13 Additionally, the Court will not award $45.10 to pay for the meal of a former co-defendant.

14 Finally, the Court agrees with Wilhelm that the cost and fee award should be
15 imposed jointly and severally against Plaintiffs and Plaintiffs' counsel. Upon granting a
16 motion for sanctions under Rule 37(b)(2), "the court must order *the disobedient party, the*
17 *attorney advising that party, or both* to pay the reasonable expenses, including attorney's
18 fees, caused by the failure, unless the failure was substantially justified or other
19 circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(b)(2)(C)
20 (emphasis added). *See also Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1230 (10th
21 Cir. 2015) ("Rule 37(b)(2)(C) expressly provides the option to impose sanctions
22 differentially (or conjunctively) on a party and its counsel . . . ."). When choosing how to
23 make this allocation, courts should follow an approach "designed to solve the management
24 problem. If the fault lies with the attorneys, that is where the impact of sanction should be
25 lodged. If the fault lies with the clients, that is where the impact of the sanction should be
26 lodged." *Matter of Baker*, 744 F.2d 1438, 1442 (10th Cir. 1984).

27 Here, much of the fault lies with Plaintiffs' counsel—counsel provided inadequate
28 damage computations at the outset of the case (in violation of the MIDP), made repeated

inaccurate statements to Wilhelm's counsel during the discovery process that were the product of sloppiness and negligence (as opposed to the product of misbehavior by the client),[2] and then made poorly-researched arguments in response to the Rule 37 motion, which counsel ended up abandoning during the motion hearing. Such conduct easily justifies the imposition of sanctions under a joint-and-several theory, even in the absence of an express bad-faith finding. *See also Devaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1161-62 (11th Cir. 1993) (rejecting attorney's argument that courts should "incorporate into Rule 37 a presumption that courts . . . must impose those sanctions on the client unless the client proves that his or her attorney instigated the relevant misconduct" and emphasizing that "[s]anctions exist, in part, to remind attorneys that service to their clients must coexist with their responsibilities toward the court, toward the law and toward their brethren at the bar").

Accordingly, **IT IS ORDERED** that:

(1) Wilhelm's motion for attorneys' fees and costs (Doc. 167) is **granted in part and denied in part**;

(2) Wilhelm is awarded $23,275 in attorneys' fees and $1,417.76 in costs, to be assessed jointly and severally against Plaintiffs and Plaintiffs' counsel; and

(3) Plaintiffs and Plaintiffs' counsel shall satisfy this obligation within 14 days from the date of this order.

Dated this 18th day of October, 2019.

_____
Dominic W. Lanza
United States District Judge

---

[2] *See generally* Doc. 151 at 11 ("The facts concerning the Dr. Li payments are troubling. Plaintiffs' counsel made repeated misstatements that were, at best, the product of sloppiness and negligence. These were not the only inaccurate statements Plaintiffs' counsel has made to the Court and to Wilhelm's counsel during this case. Additionally, Plaintiffs initially produced an incomplete set of financial records, which had key pages removed, and only produced the complete set—which revealed that Plaintiffs' counsel's earlier representations were false—after Wilhelm repeatedly objected. This chronology creates uncertainty as to whether the entire episode can be chalked up to a series of innocent mistakes.").